# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **DEBRA STONE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **3:10-cv-3156-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Debra Stone ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

### I. Procedural History

Plaintiff filed her application for Title II disability insurance benefits on

August 16, 2007, alleging a disability onset date of July 20, 2007, from "fibromyalgia/arthritis/chronic fatigue/[irritable bowel syndrome] /depression/ migraines/sinus w/allergies - 3 sinus surgeries." (R. 94, 122). Plaintiff's disability report alleged also that she is unable to work because she

> cannot lift things. I am unable to stand for long periods of time. I stay very sleepy and tired due to the chronic fatigue. I was so tired that I could not perform my duties at work. I go to the bathroom 4-5 times a day due to the IBS. I have constant headaches. I stay depressed due to the pain and other medical conditions.

(R. 122). After the denial of her application on November 14, 2007, (R. 65), Plaintiff requested a hearing on November 21, 2007, (R. 72), and received one over two years later on July 14, 2009, (R. 34). At the time of the hearing, Plaintiff was 48 years old and had an eleventh grade education and a GED. (R. 38). Her past relevant work included light and semiskilled and light and skilled work as a sales person, heavy work as a sales attendant, light and unskilled work as a delivery person, and medium and semiskilled work as a punch press operator. (R. 58). Plaintiff has not engaged in substantial gainful activity since July 20, 2007. (R. 10).

The ALJ denied Plaintiff's claim on August 27, 2009, (R. 21), which became the final decision of the Commissioner when the Appeals Council refused to grant review on November 3, 2010, (R. 1). Plaintiff filed this action for judicial

review pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings

even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

>    (4)   whether the claimant is unable to perform his or her past work; and
>
>    (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

The court turns now to the ALJ's decision to ascertain whether Plaintiff is correct that the ALJ committed reversible error.  In that regard, the court notes that, performing the five step analysis, initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, and therefore met Step One. (R. 10).  Next, the ALJ acknowledged that Plaintiff's combination of severe conditions of "fibromyalgia, cervicalgia with cervical facet arthrosis, osteoarthritis, and an adjustment disorder with depressed mood" met Step Two.  *Id*.  Having determined that Plaintiff met Step Two, the ALJ

proceeded to the next step and found that Plaintiff did not satisfy Step Three since her impairments neither met nor equaled the requirements for any listed impairment. (R. 12). Because the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030 ("A negative answer to any question other than Step Three, leads to a determination of 'not disabled.'"), the ALJ proceeded to Step Four, where he determined that Plaintiff was unable to perform her past relevant work, (R. 20), but had the residual functional capacity ("RFC") to

> perform light work [ ] as she can occasionally lift [ ] up to 20 pounds, [frequently lift] up to 10 pounds, (occasionally being up to 1/3 of an eight-hour workday and frequently being up to 2/3 of an eight-hour workday). She would need work which allows for the option to sit/stand at will and she can stand for 30 minutes at one time throughout an eight-hour workday, walk up to 350 feet continuously, and has no restriction of her ability to sit. She can frequently balance, stoop, kneel and crouch and occasionally climb ramps and stairs but she should not work on ladders, ropes or scaffolds. She should avoid concentrated exposure to fumes, odors, dusts, gas, hot/cold temperature extremes and she should not work around unprotected heights or dangerous machinery. She can concentrate for two-hour periods across an eight-hour workday and work should be limited to SVP-2 level or less types of jobs involving only simple work-related decisions (i.e., unskilled work).

(R. 14). Further, the ALJ gave "no evidentiary weight" to the Medical Source Opinion of Dr. Scott Royster ("Dr. Royster"), (R. 285), because

> it is not signed by any physician or even dated. . . . Moreover, even if

> it is from Dr. Royster, it is still given no evidentiary weight as he simply 'checked' limitations while giving absolutely no clinical or diagnostic findings on which he based his opinions. [Plaintiff] testified and Dr. Royster's own records show he essentially treats her for sinus problems and other acute illnesses as [Plaintiff] has several specialists whom she sees for her chronic conditions which she is alleging are disabling. Thus, opinions of treating specialists, those discussed elsewhere in this decision, would be more appropriate. Furthermore, the doctor's own report fail[s] to reveal the type of significant clinical and laboratory abnormalities one would expect if [Plaintiff] were in fact disabled, and the doctor did not specifically address this weakness. While the Clinical Assessment of Pain form submitted at the same time by legal counsel is signed and dated by Dr. Royster, it is given little weight in concluding [Plaintiff's RFC] for some of the foregoing stated reasons. Furthermore, less weight is afforded his opinions on that assessment form as they are inconsistent with the records of treating specialists who follow [Plaintiff] for her allegedly disabling conditions. As discussed elsewhere above in this decision, there exists a copious amount of evidence to show [Plaintiff's] pain, as well as her allegedly disabling fatigue and other symptoms are not of the severity she has alleged.

(R. 19). Because the ALJ answered Step Four in the negative, he moved on to Step Five where he considered the Plaintiff's age, education, work experience, and RFC, and determined that there are "jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (R. 20). As a result, the ALJ answered Step Five in the negative, and, consistent with the law, determined that Plaintiff is not disabled. (R. 18); *see also McDaniel*, 800 F.2d at 1030. For the reasons stated below, the court finds that the ALJ's decision is supported by substantial evidence.

V. Analysis

Plaintiff raises two grounds of alleged error by the ALJ. Specifically, Plaintiff contends that the ALJ committed reversible error because he failed to (1) "address [Plaintiff's] allegations of fatigue," doc. 9 at 6, and (2) "give proper consideration to the medical source opinion of [Plaintiff's] treating physician, Dr. Royster," doc. 9 at 7. Based on its review of the record, the court disagrees with Plaintiff that the ALJ committed reversible error.

A.   *The ALJ properly considered Plaintiff's complaints of fatigue.*

Plaintiff's contention that the ALJ failed to properly consider her complaints of fatigue is based primarily on Plaintiff's many subjective complaints of fatigue during the hearing. Doc. 9 at 7. However, Plaintiff overlooks that her complaints of disabling fatigue are not supported by the medical evidence, including Plaintiff's own accounts during physician visits. In that regard, a review of Plaintiff's medical record reveals that in 2007, Dr. Royster, and rheumatologists Dr. Vijay Jampala ("Dr. Jampala") and Dr. William Shergy ("Dr. Shergy") treated Plaintiff for complaints of fatigue caused by fibromyalgia, but that, at no time did they or any other treating physician opine that the fatigue rendered Plaintiff disabled. Specifically, on June 12, 2007, Dr. Jampala evaluated Plaintiff's complaint that she "has lot of fatigue," acknowledged Plaintiff's history of

fibromyalgia, prescribed Lyrica[1], and advised Plaintiff to exercise and continue her other medications. (R. 244). Three weeks later, on July 2, 2007, Plaintiff visited Dr. Royster and reported that her fatigue required her to take "naps during lunch" and "stop 1/2 way home from work to get out and walk around or will fall asleep driving home." (R. 185). Dr. Royster noted that Plaintiff "had labs done by her rheumatologist - was ok." *Id*. Plaintiff visited Dr. Royster again a month later, on August 16, 2007, and reported that she "had to quit work" due to her fatigue. *Id*. Dr. Royster also prescribed Plaintiff Lyrica.

The next medical visit in 2007 occurred on November 20, 2007, when Plaintiff saw Dr. Jampala and reported "increased drowsiness, increased fatigue." (R. 243). Dr. Jampala "gradually increase[d]" Plaintiff's Lyrica dose, and recommended that she return in four months. *Id*. Then on December 11, 2007, rather than returning to Dr. Jampala or Dr. Royster for that matter, Plaintiff visited Dr. Shergy instead after "having not been seen [by him] in seven years." (R. 263). Although a portion of the progress note is missing, it appears that Plaintiff complained primarily of pain in her neck and right shoulder. *Id*.

During 2008 and 2009, Plaintiff continued to visit Dr. Shergy regularly for her fibromyalgia. On January 3, 2008, Dr. Shergy evaluated Plaintiff for pain

---

[1] Lyrica is commonly prescribed to treat pain associated with fibromyalgia.

when she "reaches over head or behind her back." (R. 253). Plaintiff did not complain of fatigue. *Id*. Dr. Shergy adjusted Plaintiff's medications and requested that she "call with a progress report in a few weeks." *Id*. Plaintiff next visited Dr. Shergy two months later, on March 14, 2008, during which Plaintiff complained that she is "tired when she wakes up, tired when she goes to bed." (R. 370). Dr. Shergy changed Plaintiff's medication, ordered diagnostic testing, encouraged her to exercise, and instructed her to return in "a few weeks." *Id*. The next month, on April 8, 2007, Plaintiff reported to Dr. Shergy that she was "generally doing well," and Dr. Shergy advised Plaintiff to return "in the summer." (R. 368).

Plaintiff saw Dr. Shergy four months later, on August 5, 2008, and reported that "she is remaining active. Energy level is good." (R. 366). Dr. Shergy recommended Plaintiff return in "another few months." *Id*. However, Plaintiff returned to Dr. Shergy a month later, on September 16, 2008, complaining of leg, knee, elbow, and shoulder pain. (R. 364). Plaintiff did not complain of fatigue during this visit. *Id*. Dr. Shergy prescribed a drug and physical therapy regimen, and recommended that Plaintiff return for a follow up in a month. *Id*. The next month, on October 14, 2008, Plaintiff reported that she was "feeling much better," but that she had some "numbness after riding her horse for 30 minutes or so from her waist down." *Id*. Again, Plaintiff did not complain that she suffered from

fatigue. *Id*. The next report of fatigue occurred instead a month later, on November 18, 2008, causing Dr. Shergy to adjust Plaintiff's medication dosage: "Lyrica seems to have made her more tired and have less energy, so we will go back to a 100mg at night and decrease to a 50mg dose during the day." (R. 360). During this visit, Plaintiff reported exercising at home and using techniques she learned in physical therapy "while she is working with her horses." *Id*.

When Plaintiff returned two months later, on January 12, 2009, she informed Dr. Shergy that "her medications are all working very well for her at present for her fibromyalgia," and that she is "sleeping very well and waking refreshed. She is exercising at home." (R. 358). Three months later, on April 6, 2009, Dr. Shergy evaluated Plaintiff and noted that her "medicines are doing very well for her. She denies any side effects or problems," and that she missed "one of her B12 shots and when she went back and got it and got another one two weeks after that she could tell a significant improvement in her energy and fatigue level." (R. 356). Dr. Shergy encouraged Plaintiff to continue exercising. *Id.*

Having reviewed Plaintiff's entire medical history from 2007 to 2009, including Dr. Royster's treatment notes which the court summarizes below, this court finds that the ALJ committed no error when he rejected Plaintiff's complaints of fatigue. The ALJ appropriately included Dr. Shergy's 2009

evaluations in his analysis and determined that Plaintiff's allegation of disability due to fatigue is not credible. (R. 18). Although Plaintiff suffered from fatigue, it is clear from the medical evidence that her fatigue is well controlled with a drug regimen that included Lyrica, vitamin B12 injections, and exercise. In fact, on several of her medical visits, Plaintiff made no mention of fatigue symptoms, reported doing well, and having sufficient energy to work with and ride her horses. This is hardly evidence that supports a disabling fatigue condition. To the contrary, based on this record, there is simply no evidence to sustain Plaintiff's contention that she cannot maintain full time employment due to fatigue. Therefore, the ALJ properly considered Plaintiff's complaints of fatigue and the ALJ's finding that she is not disabled is supported by substantial evidence.

B.   *The ALJ's decision to give Dr. Royster's Medical Source Opinion "no evidentiary weight" is supported by substantial evidence.*

Lastly, Plaintiff contends that the ALJ erred by failing "to give proper consideration to the medical source opinion of [Plaintiff's] treating physician, Dr. Royster." Doc. 9 at 7. The ALJ gave "no evidentiary weight" to Dr. Royster's Medical Source Opinion because (1) it was not signed or dated, (R. 285-86), although Dr. Royster signed and dated the Clinical Assessment of Pain that followed, (R. 287-88), (2) or, alternatively, even assuming Dr. Royster completed

the form, he "simply 'checked' limitations while giving absolutely no clinical or diagnostic findings on which he based his opinions," and (3) "[Plaintiff] testified and Dr. Royster's own records show he essentially treats her for sinus problems and other acute illnesses as [Plaintiff] has several specialists whom she sees for her chronic conditions which she is alleging are disabling to her." (R. 19).

The ALJ's decision to give the unsigned Medical Source Opinion no weight is supported by substantial evidence because, even if Dr. Royster had signed and dated it, it would not serve as reliable evidence of Plaintiff's disability. The directions at the top of the form state: "FOR EACH STATED FUNCTION, INDICATE **MAXIMUM ABILITY** BY CHECKING OR FILLING IN BLOCKS. It is important that you relate particular medical findings to any assessed reduction in capacity – the usefulness of this assessment depends on the extent to which you do this." (R. 285) (emphasis not added). The form notes that Plaintiff has the following limitations: (1) stand for 30 minutes at a time, for a total of one hour in an eight hour workday, walk thirty minutes at a time, for a total of one hour in an eight hour workday, and sit one hour at a time, for a total of six hours in an eight hour workday; (2) occasionally lift or carry ten pounds; (3) occasionally perform functions regarding push/pull, using right and left arms and legs, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling; frequently

talk and hear; and never climb or balance; and (4) occasionally drive and be exposed to vibration; and never be exposed to extreme cold, heat, wetness/humidity, fumes, noxious odors, dusts, mists, gases, poor ventilation, or work in high exposed places or in proximity to moving mechanical parts. (R. 286). Incredibly, despite noting these purported limitations, Dr. Royster left all three clinical findings sections blank. In other words, despite the directions on the form, Dr. Royster provided no objective medical evidence to substantiate the limitations.

Significantly, in addition to the lack of objective substantiation, Plaintiff's own statements about her physical abilities, i.e., that she feeds the cats and chickens daily, (R. 49), rode her horse for 30 minutes in October 2008, (R. 364), and does her physical therapy "exercises at home while she is working with" and brushing her horses, (R. 360), belie Dr. Royster's opinion that Plaintiff can only occasionally push/pull, reach, handle, feel, and perform functions with her arms and legs, and can never climb or balance. (R. 364). In light of Plaintiff's own statements about her abilities, and the failure by Dr. Royster to provide any objective support for his findings, the ALJ committed no error when he rejected Dr. Royster's Medical Source Opinion.

Lastly, the ALJ's finding that Plaintiff's specialists were more credible than Dr. Royster regarding Plaintiff's chronic conditions is also supported by

substantial evidence. Plaintiff's treatment notes indicate that from August 26, 2005, through June 21, 2007, Dr. Royster treated Plaintiff primarily for respiratory related illnesses. (R. 185-194). On November 29, 2007, Dr. Royster treated Plaintiff for "arthritis in neck & shoulders going to arm" and "stuffy head." (R. 289). Next, Dr. Royster evaluated Plaintiff on January 28, 2008, (R. 330), February 15, 2008, *id*., May 15, 2008, (R. 329), and June 20, 2008, (R. 328), for respiratory and allergy related symptoms. Then, on July 7, 2008, (R. 328), August 4, 2008, *id*., September 2, 2008, (R. 327), October 3, 2008, *id*., November 4, 2008, (R. 326), December 4, 2008, *id.*, March 2, 2009, (R. 325), and March 30, 2009, *id*., Dr. Royster only administered Plaintiff's B12 injections, and there are no other treatment notes on these days. Finally, Dr. Royster treated Plaintiff on November 4, 2008, for a contused ring finger, (R. 326), and on February 13, 2009, for complaints of "chest pains." (R. 325).

     Based on this record, it is clear that Dr. Royster treated Plaintiff's fibromyalgia with B12 injections, and that Drs. Jampala and Shergy performed the evaluation of Plaintiff's chronic fibromyalgia condition. In other words, Dr. Royster was not the treating physician for the severe impairments for which

Plaintiff alleges a disability.[2] Therefore, the ALJ's decision to give Dr. Royster Medical Source Opinion "no weight" is supported by substantial evidence.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. The Commissioner's final decision is, therefore, **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

Done the 21st day of February, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[2] Dr. Royster treated Plaintiff for sinus issues, which is one of the conditions Plaintiff listed as a disability. However, the ALJ did not find that Plaintiff's sinus condition constituted a severe impairment, (*see* R. 10), and Plaintiff does not challenge this finding before this court.